IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



UNITED STATES OF AMERICA,       )
                                )
v.                              )
                                )   Case No. 1:10cr91
MARY ANGELA HERRMANN,           )
    Defendant.                  )

## MEMORANDUM OPINION

Defendant, Mary Angela Herrmann, pled guilty to wire fraud and was sentenced (i) to serve 21 months in prison followed by a three year term of supervised released, (ii) to pay restitution to the fraud victim in the amount of $231,035.91, which amount was due and payable immediately, and if not paid immediately, then to be paid at a monthly rate of $150.00 following her release from confinement, and (iii) to pay a special assessment of $100.00. Additionally, defendant consented to the entry of an order of forfeiture and a money judgment representing the full amount of the proceeds of the fraud offense. When defendant failed to make any restitution payments, the government filed a motion seeking the forfeiture of the defendant's interest in the Employee Stock Ownership Plan ("ESOP") with her prior employer as a substitute asset, which interest totaled approximately $82,253.15. Defendant now resists the forfeiture of her interest in the ESOP on the ground that such forfeiture is barred by the Employee Retirement Income Security Act of 1974 ("ERISA")[1] and the terms of the ESOP plan.

### I.

From May 2006 until April 2009, defendant was employed as a supervisor in the Accounts Payable Department of General Dynamics Advanced Information Systems ("GDAIS").

---

[1] 29 U.S.C. §§ 1001 *et seq.*

In that capacity, she supervised 13 employees responsible for entering invoices from GDAIS's suppliers of goods and services into the GDAIS accounting system. Between December 2006 and April 2009, defendant used her position of authority to embezzle (i) $190,215.31 by causing unauthorized payments to be made from GDAIS to her personal bank accounts and (ii) $40,820.61 by causing unauthorized payments to be made from GDAIS to her personal credit card accounts. In total, the defendant's fraudulent acts resulted in a $239,035.91 loss to GDAIS.

In late April 2009, GDAIS identified unusual transactions during a monthly bank reconciliation process, and a subsequent internal investigation uncovered evidence that pointed to defendant as having improperly diverted funds from GDAIS to herself. When confronted with this evidence, defendant admitted to the fraud and embezzlement, waived indictment, and pled guilty to engaging in wire fraud, in violation of 18 U.S.C. § 1343. As part of her plea agreement, defendant agreed "to the entry of a Restitution Order for the full amount of the victim's losses" and "to the entry of a personal money forfeiture judgment against her[.]" *United States v. Herrmann*, 1:10cr91, at 4, 6 (E.D. Va. Apr. 14, 2010) (Plea Agreement). Accordingly, a consent order of forfeiture in the amount of $231,035.91 was entered[2] and a restitution judgment in the amount of $231,035.91 was entered.[3] On July 16, 2010, defendant was sentenced (i) to serve 21 months in prison, followed by three years of supervised release, (ii) to pay restitution to GDAIS in the amount of $231,035.91, which amount was due and payable immediately, and if not paid immediately, then to be paid at the monthly rate of $150.00 upon her release from confinement, and (iii) to a special assessment of $100.00.

---

[2] *United States v. Herrmann*, 1:10cr91 (E.D. Va. Apr. 14, 2010) (Consent Order of Forfeiture).

[3] *United States v. Herrmann*, 1:10cr91 (E.D. Va. Jul. 16, 2010) (Restitution Judgment).

Defendant has yet to make any payments towards restitution or to forfeit any assets. She has a vested interest in an ESOP provided by a previous employer that is worth approximately $82,253.15. She was eligible to begin receiving distributions from this ESOP in June 2012 and the United States now seeks criminal forfeiture of her entire interest in the ESOP as a substitute asset pursuant to 18 U.S.C. § 853(p).

## II.

Criminal forfeiture is a powerful weapon in the government's arsenal in the war on crime. In the Supreme Court's words, "[i]n enacting [21 U.S.C.] § 853, Congress decided to give force to the old adage that 'crime does not pay.'" *United States v. Monsanto*, 491 U.S. 600, 614 (1989). To accomplish this goal, Congress used sweeping language to require the forfeiture to the United States of "any property constituting, or derived from, any proceeds the person obtained . . . as the result of such violation" and "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation[.]" 21 U.S.C. § 853(a).[4] Congress also recognized that forfeitable assets might be transferred, dissipated, spent, or disposed of in some manner, and thus made clear that in lieu of forfeitable assets, the government may seek "the forfeiture of any other property of the defendant, up to the value of any property [subject to forfeiture under § 853 (a).]" 21 U.S.C. § 853(p)(2).[5] Here, the

---

[4] *See, e.g., Monsanto*, 491 U.S. at 614 (permitting forfeiture of assets that the accused intended to use for attorney's fees); *United States v. Tanner*, 61 F.3d 231 (4th Cir. 1995) (affirming criminal forfeiture of drugstore as a facilitating asset following conviction for selling controlled substances from the store without a prescription).

[5] *See, e.g., United States v. Alamoudi*, 452 F.3d 310, 312 (affirming forfeiture of three parcels of real property and an automobile as substitute assets following a conviction for engaging in prohibited financial transactions with Libya); *see also* 21 U.S.C. § 853(p)(1) (setting forth the requirements for forfeiture of substitute assets).

-3-

government seeks forfeiture of defendant's interest in the ESOP as a substitute asset. This raises the question whether ERISA's anti-alienation and assignment provision bars such a forfeiture.

ERISA's anti-alienation and assignment provision provides in pertinent part:

**(d) Assignment or alienation of plan benefits**
(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

29 U.S.C. § 1056(d)(1). There is no doubt that this ERISA provision is applicable here, as the parties correctly do not dispute that defendant's ESOP is a pension plan subject to ERISA's anti-alienation and assignment bar.[6] Nor is there any doubt that forfeiture of a plan interest involves an alienation or assignment of that interest, albeit a less than voluntary one, but one nonetheless. It follows that ERISA's anti-alienation and assignment provision unambiguously prohibits civil or criminal forfeiture of any ERISA plan, including defendant's interest in the ESOP.

Although there is no Supreme Court or binding circuit authority squarely on point, there is closely analogous Supreme Court authority confirming that ERISA's anti-alienation and assignment provision bars criminal forfeiture of any interest in an ERISA plan. Thus, in *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990), a union sought to impose a constructive trust over the pension plan benefits owed to a union official who had pled guilty to embezzling funds from the union, in violation of the Labor Management and Disclosure Act of 1959. *Id.* at 367–69. On these facts, the Supreme Court rejected the effort to impose a constructive trust on the pension plan benefits, holding that ERISA's anti-alienation and

---

[6] A pension plan is defined as a plan "established or maintained by an employer [that] . . . provides retirement income to employees, or . . . results in a deferral of income by employees[.]" 29 U.S.C. § 1002(2)(A). Indeed, the ESOP, consistent with ERISA's anti-alienation and assignment provision, includes a "no assignment of benefits" provision, which provides that "the rights of a Participant or Beneficiary to receive payments or benefits hereunder shall not be subject to alienation or assignment, and shall not be subject to anticipation, encumbrance or claims of creditors." (dkt. 38, exh. 1, at 7.).

assignment provision prohibited such a constructive trust. *Id.* at 375–76. Importantly, in reaching this conclusion, the Supreme Court declined "to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition in the assignment or alienation of pension benefits." *Id.* The Supreme Court further explained that ERISA's anti-alienation and assignment provision "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners ... even if that decision prevents others from securing relief for the wrongs done them." *Id.* Indeed, the Supreme Court made clear that "[i]f exceptions to this policy are to be made, it is for Congress to undertake that task." *Id.* And it is clear that Congress has made no such exception in ERISA or the criminal forfeiture statute. The latter, 21 U.S.C. § 853, states that forfeiture applies "irrespective of any provision of State law," but it does not except any federal law. To be sure, *Guidry* does not involve either an ESOP or criminal forfeiture, nonetheless these factual distinctions provide no reason in principle or policy to conclude that the result in *Guidry* should not control this case and bar forfeiture of defendant's interest in the ESOP.

This result finds firm support in the decisions of the Second Circuit and several district courts, all concluding that ERISA pension plans, by virtue of the anti-alienation and assignment provision, are not subject to criminal or civil forfeiture. In *United States v. All Funds Distributed o/b/o to Weiss*, 345 F.3d 49 (2003), the government sought equitable tolling of the statute of limitations for civil forfeiture of plan benefits that had already been distributed to plan beneficiaries. *Id.* at 54–55. In the course of concluding that equitable tolling was appropriate, the Second Circuit panel made clear its view that pension plan funds not yet distributed were barred from forfeiture by ERISA's anti-alienation and assignment provision. *Id.* at 56–58; *see also United States v. Jewell*, 538 F.Supp.2d 1087, 1092–93 (E.D. Ark. 2008) (holding that

ERISA "provides no exceptions for inequitable or criminal conduct" to the application of the anti-alienation and assignment provision); *United States v. Hargrove*, No. 03CR779-02, 2006 WL 2524133 (N.D. Ill. June 26, 2006) (holding that ERISA prohibits criminal forfeiture of pension plans); *United States v. Norton*, No. 2:99CR10078, 2002 WL 31039138 (W.D. Va. Sept. 3, 2002) (holding that ERISA's anti-alienation provisions "protect the Pension Account from [criminal] forfeiture").

In summary, ERISA's anti-alienation and assignment provision bars the forfeiture of pension plan benefits in the absence of a specific congressional exception. Given that Congress has not provided such an exception, it is not proper for a court to create such an exception on equitable or other grounds.

The government offers several arguments in support of forfeiture of defendant's interest in the ESOP, none of which is persuasive. First, the government argues that its proposed forfeiture order only directs that payments otherwise due to defendant should instead be paid to the U.S. Marshals Service. According to the government, this would not result in premature withdrawal of funds and therefore would be in accordance with *Weiss*, which held that "it was not until the funds were actually released that the government could execute a warrant to arrest the funds." 345 F.3d at 57. This argument fails to persuade because the government's proffered order would be essentially the same as the attempted constructive trust disapproved by the Supreme Court in *Guidry*. *See Guidry*, 493 U.S. at 369 ("The Union asserted . . . that a constructive trust should be imposed so that the benefits would be paid to the Union rather than to petitioner."). The ERISA anti-alienation and assignment provision protects defendant's interest in the ESOP from forfeiture; not until she receives the plan funds can the government require forfeiture of those funds.

Next, the government argues that two circuit courts have held that Individual Retirement Accounts ("IRA's") and life insurance annuities are subject to forfeiture notwithstanding ERISA. *See United States v. Vondette*, 352 F.3d 772 (2d Cir. 2003); *United States v. Infelise*, 159 F.3d 300 (7th Cir. 1998). The short answer to this argument is that both cases are inapposite; both *Vondette* and *Infelise* addressed the forfeiture of types of retirement accounts—life insurance annuities and IRA's—that are not subject to ERISA's anti-alienation and assignment provision.[7] Instead, the defendants in both *Vondette* and *Infelise* relied on 26 U.S.C. § 408(b)(4), which provides that "[t]he entire interest of the owner is nonforfeitable." *Vondette*, 353 F.3d at 774–75; *Infelise*, 159 F.3d at 303–05. Defendant's argument failed because the "word 'nonforfeitable' as used in § 408(b) refers to a requirement that an individual retirement annuity must be vested in the owner." *Infelise*, 159 F.3d at 304. Accordingly, both courts concluded that "§ 408(b) says nothing at all about whether the government . . . can obtain forfeiture of the account[.]" *Id.*; *Vondette*, 353 F.3d at 774–75. Thus, because neither case addresses the ERISA anti-alienation and assignment provision, these cases are of no avail to the government.

Finally, the government argues that the criminal forfeiture statutes are, themselves, an exception to § 1056(d). Put simply, the United States argues that because the criminal forfeiture statute is broadly worded—and liberally construed[8]—and was passed after ERISA, the criminal forfeiture statute acts as an exception to the ERISA anti-alienation and assignment provision. Yet this argument also fails because such an interpretation violates the presumption against

---

[7] Life insurance annuities and IRA's are not pension plans under ERISA. 29 U.S.C. §§ 1002–1003; *see Vondette*, 353 F.3d at 775 ("The Anti-Alienation provisions of ERISA . . . do not purport to apply to IRAs or any other type of retirement benefit beyond pension plans.").

[8] *See, e.g., Alamoudi*, 452 F.3d at 316 (4th Cir. 2006) ("Courts interpret this provision liberally so as to thwart efforts by a defendant to circumvent the economic impact of an anticipated criminal forfeiture sentence.") (internal quotation marks and citation omitted).

implied repeals.[9] The simple fact that one statute was passed later than the other does not lead to the conclusion that the later statute is an exception to the first, unless there is an "irreconcilable conflict." *See Radzanower*, 462 U.S. at 154. Here there is no such irreconcilable conflict and it is for Congress, not the courts, to craft an exception.

As an alternative to immediate criminal forfeiture, the government also argues that a court has the authority to issue an order directing defendant to forfeit any funds she receives from the ESOP. The government relies upon 21 U.S.C. § 853(e), which permits a court to "take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture[.]" But § 853(e), by its very terms, is limited to the pre-conviction protection of forfeitable assets. Section 853(e) provides that a "court may enter a restraining order or injunction" either "upon the filing of an indictment or information" or "prior to the filing of such an indictment or information, if [certain requirements are met.]" 21 U.S.C. § 853(e)(1).[10] Thus, it is clear that § 853(e) only permits district courts to issue such protective orders in the pre-trial context and, put simply, it does not contemplate such post-trial measures.[11] As the government

---

[9] *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (implied repeal only found "(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest[.]"); *see also Patten v. United States*, 116 F.3d 1029, 1034 (4th Cir. 1997) ("because an implied repeal is disfavored, there is a strong presumption against such a repeal") (internal quotation marks and citation omitted).

[10] *See also* 21 U.S.C. § 853(e)(4)(A) ("[p]ursuant to its authority to enter a *pretrial restraining order under this section*") (emphasis added).

[11] Neither party has identified a case addressing the application of § 853(e) in a post-conviction setting and a further search has not identified any such case.

has not identified any statutory provision that would permit such a protective order, it is not appropriate for a court to issue such an order.

It is important to note that the result reached here is a narrow one: ERISA's anti-alienation and assignment provision bars the government from seeking criminal forfeiture of a defendant's interest in an ERISA protected ESOP plan. Importantly, neither reached nor decided here is whether a different result might obtain were a writ of garnishment pursuant to the Mandatory Victim Restitution Act of 1996[12] to be sought by an appropriate party[13] or were a restraining order pursuant to the All Writs Act[14] to be sought.[15] These arguments were not raised here.

An appropriate Order will issue.

Alexandria, VA
November 20, 2012

/s/ T.S. Ellis, III
T. S. Ellis, III
United States District Judge

---

[12] Pub. L. No. 104–132, Title II, § 206(a), Apr. 24, 1996, 110 Stat. 1232 (codified as amended in scattered sections of 18 U.S.C.).

[13] Courts have held that the MVRA operates as a congressionally created exception to ERISA's anti-alienation and assignment provision, because the MVRA makes clear that it applies regardless of conflicting federal law. *See, e.g., United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006); *United States v. Novak*, 476 F.3d 1041, 1057 (9th Cir. 2007); *United States v. James*, 312 F.Supp.2d 802 (E.D.Va. 2004); *see also United States v. Lambert*, 395 F.App'x 980, 981 (4th Cir. 2010) (holding that the MVRA supersedes tribal law exemptions and explaining that "[t]he MVRA's 'notwithstanding' clause supersedes conflicting federal statutes.").

[14] 28 U.S.C. § 1651.

[15] It is possible that the All Writs Act may permit a district court to issue such an order. *See United States v. Ageloff*, --- F.3d ---, 2012 WL 4800410, at *4 (2d Cir. 2012) (holding "that the district court properly exercised its authority under the All Writs Act to restrain [the defendant's] assets in anticipation of resentencing"); *United States v. Yielding*, 657 F.3d 722, 727–28 (8th Cir. 2011) (upholding the use of a Temporary Restraining Order under 28 U.S.C. § 1651 to preserve civil settlement proceeds until the "claim for restitution payment could be determined"); *see also, United States v. Abdelhadi*, 327 F.Supp.2d 587, 601 (E.D. Va. 2004) (issuing a restraining order to prevent a defendant's assets from being "secreted, wasted or placed beyond the reach of the victim or the government").